THE MIDDLE BRANCH MUTUAL TELEPHONE COMPANY, Appellant, v. J. L. JONES.

Telephone companies: *de facto* CORPORATIONS: ESTOPPEL. Defend-
1  ant was a member of one of three informal mutual telephone associations, a portion of whose members agreed upon consolidation and the adoption of articles of incorporation, and elected officers and directors. Prior to incorporation the proposed directors contracted with an existing telephone company for joint operation of their lines, but upon subsequent

disagreements the defendant and another proposed director refused to act further and the board attempted to fill their places. The reorganized board levied an assessment for incorporation and other expenses which defendant and others refused to pay. Afterwards articles of incorporation were signed and filed by one member from each of two of the original associations and two from the third, but the articles did not include or recognize as members all who previously attempted to act as directors, and did not ratify their action. Held, that the attempted assessment could not be enforced against the defendant on the theory that there was a *de facto* corporation; and never having participated in the levy of the assessment, the work of incorporation or its benefits, he was not estopped to question the validity of the organization or the assessment.

**Same:** ASSESSMENT OF MEMBERS: VALIDITY. The defendant having withdrawn from the proposed organization and its board of directors prior to the levy of the assessment and incorporation, and not thereafter seeking membership in the corporation nor participating in its benefits and privileges, the assessment levied upon him, so far as it related to the expense of the incorporation, was invalid.

**Same:** SEVERANCE OF TELEPHONE CONNECTION. Where the corporation thus formed never acquired ownership of the line with which defendant was connected and never assumed to accept the same, or the members of the association as members of its company, but acquired simply an interest in a common switchboard with which the rural association connected, it had no power to compel a severance of his connection with the line owned by the rural company to which he belonged, for failure to pay an assessment for the expense of maintaining the switchboard; although defendant might be obligated to contribute ratably to its maintenance on penalty of having the switching service discontinued as to him.

*Appeal from Warren District Court.*— HON. JAS. D. GAM-BLE, Judge.

MONDAY, FEBRUARY 17, 1908.

THE plaintiff, alleging itself to be a corporation owning and operating a rural telephone line, asked in its bill that defendant be restrained and enjoined from maintaining a

connection with said line on the ground that he had refused to pay an assessment provided for by its articles of incorporation, and that under the authority of said articles the board of directors had declared defendant's membership forfeited. Defendant denied the legality of the incorporation of the plaintiff and his membership in such pretended corporation, and alleged that the pretended acts of those purporting to be the directors of the plaintiff corporation were without authority.     There was a decree dismissing plaintiff's bill, and the plaintiff appeals.— *Affirmed.*

*Henderson & Henderson,* for appellant.

*Berry & Watson* and *Spurrier, Mills & Perry,* for appellee.

McClain, J.— Prior to February, 1904, three independent and disconnected rural telephone lines were in process of construction or had already been constructed, extending in different directions from the town of Norwalk, in Warren county.     The first of these planned and put into operation was one extending to the northeast constructed by thirteen members of a mutual association which seems to have been organized in some informal way, not definitely appearing in the records, as the Middle Branch Telephone Company, but which will be designated as the "north line." Persons desiring a line which should extend in a southerly direction arranged with the members of the northern line, just referred to, for the use of common poles and brackets for the distance of a mile and a half east from Norwalk, and the expense common to the two lines seems to have been met by individual subscriptions of the parties interested.     The evidence tends to show that these two lines were actually put into operation, each having its terminus in the general store of one C. F. Crow in Norwalk.     A line from the west was in the process of construction, but was not completed at the time of

the attempted or alleged incorporation of the plaintiff company, hereinafter referred to.   There was a telephone system in the town of Norwalk which will be hereafter designated as the " stock company," and there was also a long distance toll line extending into the town.   The evident advantage which would result to the users of these three lines or proposed lines of rural telephones from a switch board, by means of which a person having a phone on one line could be put into communication with a person having a phone on one of the other lines, or with one having a phone on the stock line or with the toll line, led to the call of an informal meeting on February 12, 1904, at which persons having phones on the three rural lines, either as constructed or proposed, were present.   But there is no evidence that those present had any authority to represent others having phones on the respective lines.   At this meeting the proposition of securing a switch board and maintaining a common station and operator in conjunction with the stock company was discussed, and with a view of entering into a contract with the stock company for this purpose the incorporation of a company to be known as the " Middle Branch Mutual Telephone Company " was proposed and discussed.   Officers and directors of the proposed corporation were elected, and the board of directors thus created was authorized to enter into negotiations with the stock company for procuring and installing the switch board. Proposed articles of incorporation were read and adopted with amendments which were to be inserted in due form, and the meeting was adjourned to a future date at the call of the president.

On February 18th there was a meeting of those who had been elected officers and directors of the proposed company, at which the articles of incorporation were laid on the table, and a proposed contract with the stock company was presented, which was rejected, and further negotiations with that company were ordered.   On March 9th there was another meeting of the directors, at which a contract with the stock com-

pany entered into and signed by the board of directors of the stock company and two of the directors of the proposed mutual company was approved, and at this meeting the board of the mutual company levied an assessment of $2 per member to buy one-half of the switch board, and pay its share of the operating expenses under the contract with the stock company, which was then approved, by which the mutual company as one party and the stock company as the other agreed to own and operate a switch board for the purpose of furnishing exchange over each other's telephone lines; each company to pay one-half the price of switch board, cabinet, and operator's set, and furnish its own drops, lightning rests, etc., and do its own installing. In this contract it was further provided that each company was to pay to the other five cents per message for exchange, the same to be paid by the person desiring the exchange, each company to pay half the incidental expenses, including fuel, light, and rent, and *pro rata,* according to the number of phones, the expense of hiring some one to operate the switch board. At each of the meetings above referred to, defendant, who had a telephone on the north line; was present, having been elected one of the directors at the first meeting, and as such director having participated in the negotiations with the stock company for a switch board and signed the contract already referred to, with reference to the installation and maintenance of such switch board. Subsequently the switch board was procured and installed at an expense to the members of the mutual company of $42, and the assessment on the members to meet this expense of $2 each was paid by those having phones on the north line, including defendant. After the meeting of March 9th, at which some dissension had arisen, defendant Jones and one Berry, who also had a phone on the north line, and was one of the directors elected for the mutual company, failed to participate in the proceedings of the alleged board of directors of the mutual company, and the board attempted to fill their places by the election of two other phone

holders on the north line. The board of directors in the mutual company as thus constituted attempted, in September following, to make an assessment on all members of $2 each, of which assessment $1 was for expenses of incorporation and $1 for switching expenses. This assessment was paid by only two of the phone holders on the north line, Jones and Berry and others refusing to make such payments. Thereafter the reorganized board of directors proceeded to file articles of incorporation with the Secretary of State, and the present controversy is as to whether the board thus acting had authority to deprive defendant of his connection with the wires of the north line on account of his refusal to pay this assessment.

As it seems to us the controversy has a threefold aspect, and we believe we can satisfactorily dispose of the case by considering, first, whether there was any legal incorporation of the plaintiff company; second, whether defendant was a member of such company; and, third, whether the board of directors had authority to order the severance of connections between defendant and the north line. In discussing these questions it will be necessary to bear in mind the existence, before there was any action for the incorporation of the plaintiff company, of the north line as an independent system of rural telephones by means of which the owners of telephones on that line could communicate with each other, and the further fact that none of the rural lines were constructed or put into operation by the plaintiff company. The members of the informal association by which the north line was originally installed had, as it appears, contributed $5 each as a condition of such membership, and had procured each his own phone connections with the common line. There was no transfer by this association of its property to the plaintiff corporation, and at none of the meetings with reference to the organization of the plaintiff corporation were all of the members of the north line present or represented. Some of the members of the north line who were not present at these

meetings refused to pay the first assessment of $2 made for the installation of the switch board.

I.    The articles of incorporation of the plaintiff company which were filed in the office of the recorder of Warren county on October 19, 1904, and with the Secretary of State November 14th following, are signed by four persons, two of whom were on the south line, one on the west line, and one on the north line; the last being a person selected a member of the board of directors on account of the failure of defendant and Berry to further act in procuring the incorporation.    It is recited in the articles that the company heretofore known as the Middle Branch Telephone Company mutually consents and agrees that said company shall incorporate under the name and style of the " Middle Branch Mutual Telephone Company," and that the persons whose names are subscribed to the articles, and all others who may become stockholders in the corporation, associate into a body corporate under the laws of the State of Iowa. The corporation is to commence as soon as a certificate is issued by the Secretary of State, and the business to be transacted by it is to " mutually own, construct, and operate telephone line or lines in the county of Warren and in any other county in which said company may see fit to own and operate telephone lines."    Its capital stock is " to consist of the poles, wire, insulators, brackets, cross-arms, switch boards, guy poles or wire, money and books belonging to the company, exclusive of the telephones and fixtures which are the private property of the members and no part of the company's stock "; and the amount of the capital stock authorized " is an amount sufficient to construct such telephone line or lines as the company decide to construct and operate, being the sum of $1,200, and before same is constructed and operated an amount necessary to construct same shall be paid in by the stockholders who want such line."    It is further provided that the first election of officers, consisting of president, sec-

1. TELEPHONE COMPANIES: *de facto* corporations: estoppel.

retary, treasurer, and board of directors, " shall be held February 12, 1904, and the annual election of officers shall be held on the second Friday of February in each year thereafter."    There are also provisions for assessment on members by the board of " an amount to pay the expenses of running and operating the telephone line or lines belonging to the company, and to pay for such privileges as may, in the opinion of the board of directors, be beneficial to the company," and that " any member failing or refusing to comply with the orders or assessments made by the board of directors and with the articles of incorporation and by-laws of this association shall forfeit his membership in the corporation, and be disconnected with the telephone line under orders of the board of directors."

It is to be noticed that the articles do not recite the names of any officers or members; that the date fixed for the first election of officers is a date long prior to the filing of the articles; that the articles are signed by four persons as individuals; and that they provide for further membership of all other persons who may become stockholders in the corporation.    There is no evidence of any action after the filing of the articles with reference to the election of officers, nor any action by any board of directors purporting to represent the corporation thus organized, nor is there any evidence of the admission of other members to the corporation after its organization.    It is conceded that these articles do not in all respects conform to the proposed articles tentatively adopted at the meeting of February 12, 1904, and laid on the table by the board of directors at their meeting February 18th, and there is nowhere any record of any action of proposed members authorizing the board of directors to proceed with the incorporation of the company.    Under these circumstances we reach the conclusion that, while a corporation having a membership composed of the four persons signing the articles and causing them to be filed, was in fact formed by taking the necessary steps, there was no such cor-

poration prior to the filing of these articles, and there was no board of directors of such corporation in September, 1904, when those who pretended to act as a board of. directors of a corporation which was not yet created, attempted to make the assessment on defendant which he refused to pay, and for the nonpayment of which such pretended board of directors attempted to exercise the right of severing his connection with the wires of the north line. If the action of the persons purporting to be a board of directors of the plaintiff company not yet formally organized is to be sustained, it must be on some such ground as that the plaintiff company was a *de facto* corporation, or that defendant is estopped by his action from questioning the authority of this pretended board to represent the plaintiff corporation prior to its organization.

The difficulty with the *de facto* theory is that when articles were finally filed they did not purport to include as members all the persons who had previously attempted to act as a board of directors, nor did they in any way recognize by name as members or officers those who had thus attempted to act for the corporation. Even if parol evidence is admissible to show who were elected as officers at the meeting held on February 12th, which was long prior to the actual organization of the company, there is nothing in the articles making their action the action of the company as finally organized. If the plaintiffs as formally organized were being sued under a contract purporting to have been made by these officers prior to the actual incorporation of the company, it might very well be said that the company has nowhere bound itself to responsibility for such contracts. The corporation as actually organized could not certainly be held for the acts of those purporting to be its officers prior to its incorporation without some acceptance of or acquiescence in such acts evidenced by its articles, or by the action of those formally elected to represent it. And, on this branch of the case, we therefore reach the conclusion that whatever may be the status of the plaintiff corporation, it is not in a situa-

tion to insist, as a corporation, on the advantage of informal action taken by promoters or assumed officers with reference to which no duty was assumed by it, and which it does not appear to have ratified.

On the estoppel theory no other result can be reached, for the reason that defendant has never since the organization of the company pretended to be a member thereof or accepted any privileges or benefits as such member. He failed to co-operate in the formation of the corporation, and has never applied for membership therein. The theory of plaintiff is that defendant forfeited his position on the board of directors long before the company was incorporated, and that at the time of such incorporation others were properly acting as directors in the places of defendant and Berry. It is difficult to see, therefore, how defendant is estopped from questioning the validity of the incorporation of the company and the action of the company in levying an assessment upon him prior to such incorporation. We are not now considering the question whether defendant was bound to contribute to some one for the expense of maintaining the telephone property, but only the question of his right to object that plaintiff is not duly incorporated and in a situation as such corporation to enforce some obligation as against him.

II.    The preceding discussion as to whether the assessment in question was valid as against the defendant is in the main applicable to the branch of the case involving defendant's membership in the corporation, and on this question little more need be said. Defendant did participate in proceedings looking toward the formation of some such corporation, and he did act as one of the directors of such proposed corporation, so far as one can act as the officer of a corporation which does not exist. But there is no effort here to hold him liable for anything which was done while thus acting. After he had ceased to participate in the meetings of the board of directors, and his successor had been appointed on account of his

2. SAME:
assessment of
members:
validity.

failure to act and while the corporation was still not legally organized, a board of directors attempted to levy an assessment upon him, one portion of which was for the expense of incorporation, and another portion for the expense of maintaining the telephone service. As to the latter, defendant might be liable on the ground of accepting the benefits of the service were it made to appear that he had accepted such benefits. But this is a question to be considered in the next division of the opinion. Certainly, as to the expense of the organization of a corporation in the immediate organization of which he did not participate, and of which he was not a member at the time of its organization, and to which he did not seek admission to membership afterwards, he could not in any way be liable. The theory of the plaintiff seems to be that in some way and at some time he had authorized the board of directors of the corporation to be organized to represent him and bind him in the organization of such company. But certainly something more than random conversations held at informal meetings would be necessary to impose upon him any such liability. All the record shows is that defendant was at one time in favor of the organization of a corporation, and co-operated with others in its promotion, but that afterwards, before the corporation was organized, he was recognized by those who did actually organize it as having abandoned the enterprise and being hostile to it. Whether the change of front on the part of the defendant was by reason of selfish and improper motives is immaterial. He had the right to withdraw before he had incurred any liability, and did not subsequently become bound until he in some way accepted the benefits of the corporation. The assessment levied upon defendant was invalid, then, for two reasons: First, because there was no corporation authorized to make it at the time it was made; and, second, because even if the plaintiff is entitled to rely upon the action of those attempting to represent it as directors before the organization, defendant was not at that time nor subsequently a member

of the plaintiff corporation in such sense that any assessment could be levied upon him by its directors.

III.   There might very well be an implied obligation, as already suggested on the part of defendant, to contribute to the plaintiff corporation on account of any benefit received by him from it, without regard to whether the plaintiff company was duly incorporated or the defendant was legally a member, and this implied obligation might very well be enforced by the refusal of the plaintiff to further allow the defendant to enjoy the benefits thus received; and if the plaintiff were in fact, as it assumes to be, the owner of the north rural telephone line, and under obligation to maintain it for the subscribers or members having connection with it, then we should not hesitate to hold that for refusal to contribute ratably to its proper expense the plaintiff might cut off the service to the defendant.

*3. SAME: severance of telephone connection.*

The difficulty with this theory is that plaintiff is not the owner of the north line with which defendant is connected, and over which defendant had the right before the attempted organization of the plaintiff company to carry on communications with others connected with that line.   There is a controversy in the record as to whether defendant and others who organized the north telephone line, which seems at first to have been called the Middle Branch Telephone Company, contemplated a corporation which might include members connected with the south line and the west line.   But, as a matter of fact, none who were connected or proposed to be connected with the south line or the west line ever contributed one dollar to the construction of the north line, save as the members of the north line and the south line joined in the erection of certain poles to be used in common.   The north line was constructed and put into operation as a mutual concern before any formal steps towards the adoption of articles or the election of officers for the plaintiff company were taken. Those who participated in the construction of the north line

and put it into operation constituted, *ipso facto*, a voluntary association owning the joint property, and such association never consented, nor did all its members ever consent as individuals, to the transfer of the property to the plaintiff company.

Moreover, the plaintiff company never assumed to accept such property, or to accept the members of the north line association as members of its company. As already indicated, the plaintiff company, by its articles of incorporation, was to have a capital stock of $1,200, " sufficient to construct such telephone line or lines as the company decided to construct and operate," which amount was to be paid in by the stockholders before such line or lines should be constructed and operated. The north line was not constructed and put into operation by the plaintiff company, nor did it ever agree to accept the north line as a contribution by the members of the association which had constructed it as a part of its capital stock or property. If the north line poles or wires had become inefficient for the purpose of rendering proper service to those connected with that line, there would have been no obligation under the articles of incorporation resting upon the plaintiff company to repair or reconstruct the same. As a matter of fact the plaintiff company has never had anything to do with the construction, operation, or maintenance of the north line as a mutual telephone line. It has never made any assessment on its members for the purchase or maintenance of such line, nor has it ever used any of its funds for that purpose. At the meeting at which the articles were considered an amendment was adopted, not found in the articles as recorded, providing that each division is to take care of its own line. The sole connection between the members of the north line association and the plaintiff company has been with reference to the switch board installed at Norwalk, and the service necessary in connection therewith, one-half of which the plaintiff company, through its officers acting before it was incorporated, had undertaken to pay.

So far as the switch board is concerned defendant, availing himself of the privileges thereof, would no doubt be bound to contribute ratably to its maintenance on the penalty of having the service discontinued as to him, provided the plaintiff showed itself the owner of an interest in such switch board and under obligations to maintain it.   But there is not a word in the articles of incorporation nor an act of the officers of the plaintiff company so far as they assume to be such officers and to act for it after the company was duly incorporated, asserting any ownership of the switch board, or assuming any obligations with reference thereto.   If plaintiff does not own or control the switch board or any interest therein, how can it levy on the defendant any assessment for its maintenance?

But assuming that the plaintiff does own an interest in the switch board and is contributing to the expense of its maintenance under some sort of a contract or arrangement, plaintiff's right with reference to defendant is to deprive him of the use of the switch board, and not to deprive him of the benefit of connection with the north line over which he was entitled to hold communication with other members of that line before there was any switch board, and before there was any action toward incorporation.   The fundamental difficulty with plaintiff's case is that without having acquired any right to the north line whatever, and without having received into its membership even a majority of the owners of the north line, it is attempting to deprive the defendant of his connection with that line, a connection valuable to him, and of which he can make use without regard to the switch board installed at Norwalk.   For these various reasons it is apparent, we believe, that the plaintiff, in attempting to control the connection of defendant with the line to which he contributed and of which he was part owner, has entirely exceeded its authority, even conceding that it is a duly organized corporation.

The decree of the lower court denying the relief prayed for by plaintiff is manifestly right, and it is *affirmed*.